THE STATE OF NEW JERSEY, RESPONDENT, v. ALFRED
COLLINS, DEFENDANT-APPELLANT.

Argued May 23, 1949—Decided June 20, 1949.

*Mr. James B. Avis* argued the cause for the defendant-appellant.

*Mr. E. Milton Hannold,* Prosecutor of the County of Gloucester, argued the cause for the respondent.

The opinion of the court was delivered by

BURLING, J. This is an appeal, pursuant to *Article 6, section 5, paragraph* 1(c) of the Constitution and *Rule* 1:2–1(c) of this court, in a capital cause. Appellant was convicted on January 13, 1949, of the first degree murder of Alberta Sharp on September 5, 1948, in the Gloucester County Court. The jury did not recommend life imprisonment and in accordance with the statute, *R. S.* 2:138–4, the appellant was sentenced to death. Execution of this sentence was stayed pending the disposition of this appeal. *Rule* 1:2–16(a).

The appellant raised four questions in his brief. At the oral argument, however, the third and fourth of these which dealt with the formalities of the sentence and with the contention that the verdict was against the weight of the evidence, were abandoned. Accordingly there remains for our consideration only the first two questions which pertain to the

denial of appellant's motions for a change of venue and trial by a foreign jury.

On the morning of September 7, 1948, Alberta Sharp, a 16 year old resident of the village of Jefferson, Gloucester County, was found dead in a gravel pit in the vicinity of Jackson Road and approximately a mile and one-half from State Highway 45 in the Township of Mantua, Gloucester County. Subsequent examination of her remains disclosed that she had died of a gunshot wound in the head, a .22 calibre bullet having pierced the brain and lodged on the opposite side of the head from the point of entry.

The deceased girl had left the store of Eva Berry where she was employed, on the Clarksboro Road in Jefferson at about 10:30 P. M. on the night of September 5, 1948; shortly thereafter she was seen walking along State Highway 45 in the direction of her home. Appellant was apprehended in Philadelphia, Pennsylvania, as a result of his automobile having been seen while parked in the vicinity of the crime at the time of the event. A search was made of his automobile and under the dashboard was found a .22 calibre gun, which ballistic tests proved to be the murder weapon. After interrogation, Collins admitted the homicide in a confession that the killing was the result of a suicide pact in which he had at the last minute reneged. He did not subsequently repudiate it or attempt to challenge its voluntary character. It is unnecessary to relate further details of the crime.

The State proceeded upon the theory that there had been either a murder in the perpetration of a robbery or a willful, deliberate and premeditated murder, both of which are classified as murder in the first degree by *R. S.* 2:138-2. The evidence supported either theory. The appellant did not testify and in view of the other evidence presented the jury had the right to reject his motive and even if his motive was accepted by the jury it was nevertheless first degree murder.

On December 15, 1948, the appellant, after due notice to the prosecutor, applied to the Assignment Judge of Gloucester County for a change of venue and for a foreign jury. Both motions were made in conformity with *Rule* 2:6-2. The

applications were accompanied by affidavits from citizens of six different localities situate in Gloucester County stating their belief that a fair and impartial trial could not be had therein. The motion for a foreign jury was also accompanied by clippings from newspaper circulating throughout Gloucester County. Both motions were denied by the Assignment Judge and it is the denials of these motions that are urged as error.

Both of the motions were made pursuant to *Rule* 2 :6–2. They are identical in nature save as to the relief desired and are both predicated upon the alleged impossibility of obtaining a fair and impartial trial from a panel of Gloucester County jurors. The reason assigned in support of each motion was the purported public ill-feeling towards the appellant because of the unfavorable newspaper publicity attending the apprehension and detention of the appellant. In view of the similarity of the motions we may dispose of them together.

■■ *Rule* 2 :6–2 merely restates the former practice in this State. While *R. S.* 2 :94–4 permitted the former Supreme Court to order a foreign jury when in its judgment a fair and impartial trial could not be had before a jury of the proper county, that statute is merely declaratory of an ancient and undoubted prerogative of the former Supreme Court as the successor in this State to the Court of King's Bench. It will serve no useful purpose to review the historical development of this power which is set forth in *City of Hoboken v. Griffin,* 97 *N. J. L.* 16, 17 (*Sup. Ct.* 1921), and in the learned opinion of Mr. Justice Rugg in *Crocker v. Justices of Superior Court,* 208 *Mass.* 162, 94 *N. E.* 369, 376 (*Sup. Jud. Court of Mass.* 1911). This power, which pertained to both the ordering of foreign juries and change of venue was transferred to the Superior Court upon the passing of the former Supreme Court. *Constitution, art.* 11, § 4, *par.* 3. Provisions have been made in our rules for its exercise on both the civil and criminal sides. *Rules* 2 :6–2, 3 :3–3. In these rules no change has been made in the prior law except that on the civil side the power to order a change of venue has been circumscribed after the pleadings are closed. After that

time the permissible ground for such action is the same as on the criminal side, namely when a fair and impartial trial cannot be had in the county where the action is to be tried. The difference between the rule in civil and criminal cases is set forth in *City of Hoboken v. Griffin, supra,* at *p.* 18.

■■ Motions for a change of venue or for a foreign jury are addressed to the sound discretion of the court. Such a discretion must be a sound discretion guided by law. It must be neither arbitrary, vague nor fanciful and must be in consonance with well established principles of law. *In re Longo,* 124 *N. J. L.* 176, 181 (*E. & A.* 1939); *LaBell v. Quasdorf,* 116 *N. J. L.* 368, 372 (*Sup. Ct.* 1936). The exercise of such discretion will not be disturbed on review unless it has been clearly abused.

■ Giving due effect to the rule, an examination of the supporting proof to both motions discloses no such clear abuse of discretion by the court. While it appears that the murder of Alberta Sharp evoked considerable public comment and was the subject of newspaper publicity in and about Gloucester County, that taken by itself is insufficient to warrant the conclusion that a fair and impartial trial could not have been had by a jury of Gloucester County citizens. The test, as was pointed out in *State v. Lynch,* 103 *N. J. L.* 64 (*E. & A.* 1926), is whether an impartial jury could be obtained from among the citizens of the county. Refer also to *State v. Stevens,* 102 *N. J. L.* 537, 540 (*Sup. Ct.* 1926). The affidavits and articles relied on by the defendant fall short of being clear and convincing proof that a fair and impartial trial could not have been had before a jury of the county in which the indictment was found.

Trial by jury has long been a cornerstone in the administration of justice. The law requires that juries be drawn primarily from the citizens of the county. The assumption that jurors are easily swayed by passion and prejudice to the extent that they are incapable of rendering true verdicts involves a tacit assumption that the citizens from whose ranks they are drawn are incapable of assuming the prerogatives of citizenship.

It has never been a ground in this State for challenge to a juror that he has read newspaper reports relating to the case so long as he declares his ability to consider the case on the evidence. *State v. Overton,* 85 *N. J. L.* 287, 290 (*E. & A.* 1913); *State v. Hauptmann,* 115 *N. J. L.* 412, 444 (*E. & A.* 1935). All of the jurors were called to the witness stand and questioned on their *voir dire.* Every juror challenged for cause was excused by the court. There was no adverse ruling made by the court, as to any juror challenged for cause and therefore no objection by counsel for the defendant appears on the record in the selection of the jury. Further no objection was made by the defendant or by his counsel as to the seating of any juror, and the defendant was not prejudiced by any action or ruling by the court in relation thereto.

Since it does not appear that the defendant's right to a fair trial by an impartial jury was denied him, there was no abuse of discretion by the court in denying the motions.

The judgment of the Gloucester County Court is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.