**Parker HEMPHILL, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 15, 1965.

Rehearing Denied Sept. 30, 1966.

C. B. Upton, Williamsburg, for appellant.

Robert Matthews, Atty. Gen., F. E. Wood, Asst. Atty. Gen., Carlos B. Pope, Commonwealth's Atty., Barbourville, for appellee.

PALMORE, Judge.

Parker Hemphill appeals from a judgment of the Knox Circuit Court entered pursuant to a jury verdict finding him guilty of voluntary manslaughter and fixing his punishment at 21 years' imprisonment. KRS 435.020. This is the second appeal in the same case, a previous con-

viction having been reversed in Hemphill v. Commonwealth, Ky., 379 S.W.2d 223 (1964). The indictment was for wilful murder.

All of the grounds advanced in support of the instant appeal concern the formation of the jury, which was summoned from Laurel County following an unsuccessful effort to empanel a jury from Knox County. Appellant alleges prejudicial errors in these respects:

1. The trial court did not make "a fair effort in good faith * * * to obtain a jury free of bias" in Knox County before securing jurors from the adjoining county. Cf. KRS 29.262; RCr 9.33.

2. Prospective jurors from Knox County were excused upon admitting that they had formed opinions about the case, but without being asked whether they could lay such opinions aside.

3. The sheriff was directed to summon jurors from the panels that had served at the preceding terms of the Laurel Circuit Court, whereas the trial judge, who was also judge of the Laurel Circuit Court and a resident of Laurel County, could have drawn the names from the jury drum.

4. Appellant's counsel was not permitted to question prospective jurors with respect to their willingness to inflict capital punishment.

This case had been tried twice before, the first effort having resulted in a mistrial and the second in a reversal. Unquestionably it had received wide publicity in Knox County. Nearly every prospective juror drawn from that county disclosed on voir dire that he had heard of the case, and most of them had formed or expressed opinions. During the early stages of preliminary interrogation conducted from the bench, several veniremen who acknowledged having opinions were asked whether they could disregard their opinions and render a fair and impartial trial, and almost uniformly they replied

that they could not. The trial judge thereupon determined, over objection by defense counsel, that all persons having opinions on the case would be disqualified without being further asked whether they could nevertheless fairly and impartially try the case.

When the original panel of 24 was exhausted only six jurors had been tentatively seated. The court then drew from the wheel the names of 75 more persons, 44 of whom appeared and were available for service the next morning. 18 of these were disqualified before another six jurors could be tentatively seated. The Commonwealth's Attorney promptly asked whether any of the 12 had conscientious scruples against returning the death sentence, and 11 said they did. This question had not been asked and the Commonwealth had not sought the death penalty at either of the previous trials. Of the next 20 jurors called, all but four were excused by reason of relationship or preconceived opinion. Thus it appears that of 68 persons called from Knox County only five remained, four of whom had not yet been questioned on the death penalty. The panel being again exhausted, the trial court determined that it would not be practicable to obtain an impartial jury in Knox County and directed the sheriff to summon all of the jurors who had served at the last term of the Laurel Circuit Court. Defense counsel duly objected.

On the next day 47 prospective jurors from Laurel County reported for service, and after the first 12 were tentatively seated the Commonwealth's Attorney questioned them on voir dire but failed to ask whether they had any scruples against the death penalty. Defense counsel thereupon renewed his objections and moved that the panel be discharged and a renewed effort be made to obtain a jury from Knox County. However, the Commonwealth's Attorney claimed his omission to interrogate the prospective jurors on the death penalty had been an oversight, and he was permitted to resume the voir dire for that

purpose. As a result, eight were disqualified immediately, and at the end of the day the panel was exhausted without the completion of a jury, whereupon the court directed the sheriff to summon more jurors from the list of those who had served at the next to last term of the Laurel Circuit Court.

Formation of the jury was completed on the following day. On this last day the Commonwealth abandoned asking the prospective jurors whether they had any scruples against giving the death penalty, and defense counsel sought to take up where the Commonwealth left off in this respect. Being of the opinion, however, that this could have no purpose except to defeat the formation of a jury at all, the court would not permit it.

Having thus summarized the formation of the jury, we return to the arguments.

The basis for the contention that the trial court did not make a fair effort to obtain a jury in Knox County is that the Commonwealth's Attorney injected the capital punishment question in bad faith and for the sole purpose of disqualifying Knox County jurors. On the record, the Commonwealth's Attorney controverted this charge by stating that it had been his intention to demand the death penalty until after the two regular panels from Knox County and one special panel from Laurel County were exhausted, at which time he decided to abandon the effort.

■ It goes without saying that the Commonwealth has a right to seek the death penalty in a murder case and to qualify a jury accordingly. How can a court be expected to determine whether a Commonwealth's Attorney is acting in good faith when he chooses that course? We think the answer is and must be that in the absence of an admission or clear proof to the contrary, when he acts within his

rights as attorney for the Commonwealth the nature of his office commands a presumption of propriety. Hence we are unable to say in this case that there was any error or violation of the appellant's rights in the Commonwealth's disqualification of prospective jurors through the means of interrogating them on the question of capital punishment.

Before adoption of the Rules of Criminal Procedure it was provided by Criminal Code § 209 that an opinion based on rumor or newspaper statements would not disqualify a prospective juror if he swore that he could fairly and impartially render a verdict in accordance with the law and evidence. That section and the other provisions of the Criminal Code dealing with challenges for cause have been superseded by RCr 9.36, in which the grounds for a challenge for cause are no longer specified in particular but are embraced in one broad category, as follows: "When there is reasonable ground to believe that a juror cannot render a fair and impartial verdict on the evidence, he shall be excused as disqualified to serve." RCr 9.36(1).

■ We are not cited to any instance under the Criminal Code in which the propriety of disqualifying a prospective juror under circumstances similar to those in this case was challenged. The only possible prejudice that could result is, of course, the very thing that happened here, which is that the case eventually had to be tried by jurors from another county.[1] But the right of each side to an impartial jury is of far greater importance than the right of either to a trial in the precise county in which the crime is alleged to have taken place. Without deciding whether, under different circumstances, a trial court would abuse its discretion by dismissing prospective jurors on the basis of preconceived opinions without seeking to find out if they could lay such

---

1. There is no constitutional violation, however. See Baxter v. Commonwealth, 292 Ky. 204, 166 S.W.2d 24 (1942).

opinions aside, we have no difficulty in concluding that in the circumstances of this case the trial court acted reasonably and within its proper discretion.

 The contention that the Laurel County jurors were selected improperly rests on the premise that since the circuit judge who conducted the trial resided in Laurel County he was not absent from that county, even though he was holding court in Knox County. KRS 29.262, which is reprinted in the Rules of Criminal Procedure as RCr 9.33, provides that if the circuit judge of the adjoining county is present in that county at the time, the names of the jurors shall be drawn from the jury drum. Otherwise, the sheriff is to procure a list of the jurors who served at the previous regular term. The record does not reveal where the judge actually was when the sheriff of Knox County arrived at the Laurel County Court House. Presumably he expected to be in Knox County, and there was no legal requirement that he proceed to Laurel County in order to make himself available when the sheriff arrived. Certainly he had the right to remain where his court was in session and continue attending to whatever business came before that session. We do not say KRS 29.262 is not mandatory. There simply is not any proof in the record that it was violated.

Complaint is made also of the court's resort to Laurel County over three other adjoining counties for selection of the jurors. The point here is that Laurel and Knox Counties are in the same circuit and that by reason of having practiced cases in Laurel County the Commonwealth's Attorney was acquainted with the jurors. That circumstance is not enough to justify interfering with the discretion of the trial court. Cf. Patterson v. Commonwealth, 256 Ky. 745, 77 S.W.2d 14, 16 (1934).

The last argument on this appeal is that appellant was prejudiced by not being allowed to inquire of the prospective jurors whether they could inflict the death penalty, in that the answers would have assisted in the exercise of peremptory challenges. This contention is answered by the verdict itself (21 years for voluntary manslaughter), which makes it obvious that the willingness or unwillingness of the jurors to give the death penalty actually did not figure in their deliberations. Thus the state of mind of the individual jurors on this particular question at the voir dire stage proved to be of no consequence, from which it follows that there could not have been any prejudice.

The judgment is affirmed.