COMMONWEALTH vs. ALEXANDER ALDOUPOLIS
(and four companion cases[1]).

Norfolk.  May 19, 1983. — November 16, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Place of trial.  *Superior Court.  Jury and Jurors.*

It was within the authority of a Superior Court judge sitting in the county
in which certain criminal indictments had been returned to order that
a jury be empanelled in another county and brought into the first county
for the trial, where an impartial jury could not be empaneled in the
first county, where a trial in the second county would cause both the
defendants and the Commonwealth great expense and inconvenience,
and where the defendants had consented to the procedure.  [442-447]

INDICTMENTS found and returned in the Superior Court
Department on August 5, 1980.

The case was reported to the Appeals Court by *John Paul
Sullivan,* J.  The Supreme Judicial Court granted a request
for direct review.

The case was submitted on briefs.

*Stephen Hrones* for Alexander Aldoupolis.

*Thomas Butters* for Richard Dovel.

*P. J. Piscitelli* for Mark Savoy.

*William Pritchard* for John Strickland.

*Joseph R. Welch* for Robert J. Tarr.

*Gerald M. Kirby & Charles J. Hely,* Assistant District At-
torneys, for the Commonwealth.

LIACOS, J.  Subsequent to our decision in *Aldoupolis* v.
*Commonwealth,* 386 Mass. 260 (1982), the defendants were
allowed to withdraw guilty pleas previously entered in pros-
ecutions for rape and other offenses which allegedly occurred

---

[1] The companion cases are against Richard Dovel, Mark Savoy, John
Strickland, and Robert J. Tarr.

in Norfolk County. The empanelling of jurors commenced on April 4, 1983, in the Superior Court in Norfolk County. The attempt to obtain an impartial venire in Norfolk County was unsuccessful, and the defendants moved for, and were granted, a change of venue to Hampden County. As a result of their concern over the substantial expense and inconvenience of conducting a trial in a distant locality, the defendants sought to empanel a jury in Hampden County but to conduct the trial in Norfolk County. The judge, apparently doubting his power to grant the request of the defendants, allowed their motion to report a question of law to the Appeals Court on a statement of agreed facts. Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We allowed the defendants' application for direct appellate review.

The question reported is: "Whether, with the consent of all the co-defendants, a jury may be empaneled in another county, i.e., Hampden, to which the trial of the defendants has been transferred because of inability to secure a fair and impartial group of jurors in the county where the indictments were returned, i.e., Norfolk, and said jury returned to Norfolk County under sequestration for the purpose of hearing the trial on the merits."

On May 23, 1983, this court issued the following order: "On the record presented by the reservation and report, we herewith authorize and direct the empanelment of the jury in Hampden County, and the trial on the several indictments to take place in Norfolk County. Opinion to follow." This opinion is given in explanation of that order. Although the order we issued rests on the authority of this court, see G. L. c. 211, § 3, we think it would be helpful to discuss the question of the authority of a Superior Court judge, should similar circumstances arise in the future. We note that, although the question reported does not explicitly ask *who* has such power, the record indicates a concern by the Superior Court judge as to the scope of his authority.[2]

---

[2] We note that the defendants went to trial on May 26, 1983, and were acquitted of all but the charges pertaining to malicious destruction of property.

The facts agreed on by the parties are summarized as follows. The empanelling of the jury commenced in the Superior Court in Norfolk County on April 4, 1983. The judge questioned 107 individuals from a Norfolk County venire and made preliminary findings concerning the effect of prior publicity on the ability of the defendants to obtain an impartial jury. The judge found that 103 of the 107 prospective jurors were aware of the background of the case, and approximately one-third of them knew that the defendants had previously pleaded guilty to the charges for which they were currently being tried. Consequently, the judge granted the defendants' renewed motions for a change of venue and for a mistrial on the basis that they could not obtain an impartial jury in Norfolk County, and ordered the transfer of the case for trial to Hampden County.

The defendants then expressed their concern over the substantial expenses that they would incur if the trial were to be held in Hampden County. All of the defendants, their families, and their attorneys reside, or maintain their offices, in Norfolk, Plymouth, and Suffolk Counties. Almost all of the witnesses for the Commonwealth and the defendants reside in Norfolk or Plymouth County. Because the trial was anticipated to last approximately three weeks, the defendants were concerned about the travel and lodging expenses for themselves and their families, as well as for their counsel and witnesses.[3] The defendants also believed that a Hampden County trial would impede the ability of their counsel effectively to represent them, given the difficulty in completing and transporting the necessary paperwork to Hampden County from their offices located at the other end of the State.

The parties acknowledged that the Commonwealth would incur no greater expense should the jurors be sequestered

---

[3] Two of the defendants were represented by court-appointed counsel, and the Commonwealth would incur a substantial expense for their travel and lodging costs, as well as for the attendance of witnesses. Similar expenses would be incurred by the prosecutor and his staff.

in Hampden County or Norfolk County. Furthermore, the Commonwealth recognized that all parties concerned would incur substantial expense and inconvenience if the cases were tried in Hampden County.[4] Based on these concerns, the defendants moved for a reservation and report.

We confront for the first time the issue whether a jury in a county other than where the crimes allegedly occurred may be empanelled for the purpose of hearing a trial in the county of indictment, provided that the defendants consent. We conclude that, in the circumstance of a case such as this, such a procedure may be adopted. We further conclude that a judge of the Superior Court has authority under the common law to issue such an order.

In answering the question reported, we need not consider the effect of art. 13 of the Massachusetts Declaration of Rights, which prescribes that a criminal trial must take place in the vicinity where the alleged offense occurs and where the indictment was returned. See *Commonwealth* v. *Handren*, 261 Mass. 294, 297 (1927); *Crocker* v. *Superior Court*, 208 Mass. 162, 167 (1911). See also U.S. Const. art. 3, § 2, cl. 3. The defendants have waived their constitutional right to demand a trial in the locality by moving for a change of venue. See *United States* v. *Angiulo*, 497 F.2d 440, 441 (1st Cir. 1974) (upon defendant's motion to transfer venue of trial, trial judge may use discretion and transfer case to district where no part of alleged offense occurred); *United States* v. *Marcello*, 280 F. Supp. 510, 520 (E.D. La. 1968), aff'd, 423 F.2d 993 (5th Cir.), cert. denied, 398 U.S. 959 (1970) (once defendant moves for venue change, decision concerning where to transfer within discretion of trial judge). Although the Commonwealth also may have the right to demand that the prosecution of a defendant take place before a jury drawn from the vicinity where the crime

---

[4] In the statement of agreed facts it is noted that the parties had requested a view which the judge was inclined to grant. Many sites relating to the alleged incident are located in Holbrook in Norfolk County.

occurred,[5] the government has not sought to invoke this right.  The Commonwealth has furthermore relinquished this right by consenting to the defendants' motion for the venue transfer.  Cf. *Sebastian* v. *Carroll*, 353 Mass. 465, 468 (1968) (in civil case, plaintiff waives venue where defendant has removed action to a different county and plaintiff proceeds to trial without raising issue).

We consider first the authority of a judge of the Superior Court to empanel a jury from another county to sit for trial in the county where the indictment is returned.

1. *Authority of the Superior Court.*  The Commonwealth contends that a Superior Court judge lacks the common law or statutory authority to order the transfer of a jury from a foreign county to hear trial in the county of indictment.  The Commonwealth argues that the wording of Mass. R. Crim. P. 37 (c), 378 Mass. 914 (1979), prescribes that when a judge has ordered a change of venue in a case "[t]he clerk of the transferee court shall make immediate entry of the case upon the docket of that court and shall so notify the clerk of the transferor court so that the case may be closed on the docket of that court.  The prosecution shall continue in the transferee court."  We construe rule 37 (c) as setting forth the procedure to be followed when a trial judge has decided that a change of venue is the proper action to take in ensuring a defendant a fair trial.  The rule does not limit in any way the authority of a trial judge to issue alternative orders to secure a defendant a fair and impartial trial in the interest of justice.  Cf. *Crocker* v. *Superior Court, supra* at 180 (when change of place of trial ordered, criminal indictment remains unchanged as to venue, and all proceedings on it, except trial, should be in county

---

[5] Cf. *Singer* v. *United States*, 380 U.S. 24, 36 (1965) (government has legitimate interest in having cases tried before jury where it believes conviction warranted); Fed. R. Crim. P. 23 (a) (defendant may waive right to jury trial with consent of government).

where indictment obtained).[6] A judge of the Superior Court is not precluded, by rule 37 (c), from importing a foreign jury as a substitute for the change of venue order so as to ensure a defendant an impartial trial in a convenient forum.[7]

The Commonwealth also advances the argument that the power of a Superior Court judge to order a trial is limited to the times and places of its regular sittings within the same county as set forth in G. L. c. 212, § 14.[8] See *Commonwealth* v. *Handren, supra* at 298.[9] However, the transport-

---

[6] Under Fed. R. Crim. P. 20, the Federal counterpart to Mass. R. Crim. P. 37 (c), courts have decided that the transferring court maintains jurisdiction over the case and may order the defendants before it by warrant, mandamus, or writ of habeas corpus ad prosequendum. *United States* v. *Tollett*, 76 F. Supp. 871, 871-872 (D. Or. 1948). See also *Perry* v. *United States*, 432 F. Supp. 645, 648 (M.D. Fla. 1977) (if defendant pleads not guilty after rule 20 transfer, subject matter jurisdiction returns to transferor court).

[7] We note that other States have recognized the authority of a judge of a comparable trial court to order a foreign jury instead of transferring the place of a trial. *Patterson* v. *Commonwealth*, 256 Ky. 745, 749 (1934). See also *Hemphill* v. *Commonwealth*, 405 S.W.2d 956, 959 (Ky. 1965); *Baxter* v. *Commonwealth*, 292 Ky. 204, 213 (1942); *State* v. *Cutshall*, 281 N.C. 588, 591 (1972); *State* v. *Collins*, 2 N.J. 406, 410 (1949).

[8] General Laws c. 212, § 14, provides in part: "A regular sitting or regular sittings of the court in the several counties shall be held in each year in each of the following places: — . . . For Hampden, at Springfield; . . . For Norfolk, at Dedham; . . . . Said court may adjourn any sitting . . . from one place to another within the county . . . in the manner and with the effect of adjournment to another shire town, and such adjournment shall be subject to all the laws relative to adjournment to another shire town. . . ." Other statutes giving a Superior Court judge the authority to change the place of trial also limit that authority to set the place of trial within the same county. See, e.g., G. L. c. 213, § 10; G. L. c. 220, § 5. We are not concerned in this case, however, with a change of place of trial, or a change of venue, but rather the use at the regular place of sitting of a jury from another county.

[9] The Commonwealth's reliance upon *Handren* is misplaced. The court in *Handren* decided that a Superior Court judge had no authority to adjourn a trial to the private residences of physically disabled witnesses. *Commonwealth* v. *Handren, supra* at 298. The judge in the present matter has ordered that trial be held in the Norfolk County courthouse, not in a private residence where the public or press cannot obtain access. See *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 722 (1973) (under G. L.

ing of a jury from Hampden County to Norfolk County will not affect the ability of the trial judge to conduct his trial at Norfolk County during a statutorily prescribed sitting. General Laws c. 212, § 14, is thus inapplicable to the issue here. We note also that G. L. c. 212, § 14, does not curtail the liberal statutory authority of a Superior Court judge under G. L. c. 213, § 5, to transact any court business and direct the entry of any order in an action pending in the same court in another county.

Although it could be argued that a Superior Court judge sitting in one county could order the empanelment of a trial jury for another county, we need not decide whether c. 213, § 5, provides such authority to a judge on the Superior Court.[10] We conclude instead that the common law vests the Superior Court with the authority to issue such an order when necessary to further the administration of justice. It is a well established principle that the common law authority of the Superior Court derived from that exercised by its English counterpart, the Court of King's Bench in England. *Crocker* v. *Superior Court*, 208 Mass. 162, 170 (1911). *State* v. *Collins*, 2 N.J. 406, 410 (1949). See Acts and Resolves of the Province of Massachusetts Bay, Vol. 1,

---

c. 220, § 5, time and place of trial may be changed provided that place is where public may attend).

[10] General Laws c. 213, § 5, provides in part: "The courts and the justices thereof . . . may in any county transact any business of such courts and direct the entry of any order, judgment or decree in an action . . . pending in the same court in another county."

Relying on two cases by this court, the Commonwealth argues that c. 213, § 5, does not empower the Superior Court to empanel a foreign jury for the purpose of holding trial in the county of indictment. Although we reserve our judgment on this issue, the precedent set forth by the Commonwealth does not wholly support its premise. Compare *Davis Bros. Fisheries* v. *Pimentel*, 322 Mass. 499, 511 (1948) (upon reversal and remand of interlocutory decree rendered by Superior Court judge, latter could reconsider order although sitting in different county than where bill initially filed); with *Stoneham* v. *Coakley*, 266 Mass. 64, 66 (1929) (G. L. c. 213, § 5, does not authorize a judge to change venue of properly brought equity action merely because action at law involving many identical issues pending in another county).

at 371 (1700); Provisional Laws of 1699, c. 3, § 1. As established by statute in 1859, the Superior Court of the Commonwealth became a court of general criminal jurisdiction possessed of the inherent powers previously held by the Court of King's Bench. *Crocker, supra* at 171-172. St. 1859, c. 196, § 1. The King's Bench had the authority to remove a case to another county for trial where a fair and impartial jury could not be obtained in the locality where the crime allegedly occurred. *Crocker, supra* at 168, citing *The Queen* v. *Palmer,* 51 El. & Bl. 1024 (1856); *The Queen* v. *Conway,* 7 Ir. R.-C.L. 507 (1858). A judge of the Superior Court thus has the same legal authority to remove a case where a fair trial cannot be held in the county where the indictment was obtained. *Crocker, supra* at 180. Mass. R. Crim. P. 37 (b) (1).

The King's Bench also possessed the inherent authority to import a jury drawn from a county other than that where the crime allegedly took place. *Sacheverell's Case,* 10 How. State Trials 30, 33 (1684). See also *Crocker, supra* at 167.[11] Early Massachusetts courts, in the interest of convenience, also used jurors in the locality of the forum, although the offenses being prosecuted occurred in other counties. The Court of Assistants in Boston, the only tribunal empowered at that time to hear capital felonies, used jurors from Suffolk and Middlesex Counties, although the offenses alleged occurred anywhere in the State. *Commonwealth* v. *Parker,* 2 Pick. 550, 554 (1824).[12] Moreover, in 1791 the Legislature enacted a statute which gave the court sitting in Lincoln County, after two new counties had been created from territory formerly within Lincoln County, jurisdiction over

---

[11] *Sacheverell's Case* involved a prosecution for rioting which occurred during a mayoral election in the town and county of Nottingham. 10 How. State Trials 30, 33 (1684). The Court of King's Bench had granted the defendants' request that a jury be obtained and brought before the court from the adjoining county of Kent. *Id.* at 35.

[12] See Charters and General Laws of the Colony and Province of Massachusetts Bay, c. 61, § 1, at 144 (1684). The Act provided in part: "all juries serving at the court of assistants at Boston, shall be summoned respectively out of the counties of Suffolk and Middlesex."

matters occurring in those counties and the power to summon jurors therefrom to sit and hear matters in Lincoln County (now part of the State of Maine).[13] *Id.* at 556. See Act of the Legislature of 1791, c. 8, June 17, 1791 (Perpetual Laws, vol. II, at 97). There is common law precedent, therefore, both in our decisional law and as evidenced in the reports of the King's Bench for the proposition that a Superior Court judge has the authority under common law to select a trial jury from a foreign venire where an impartial jury cannot be obtained within the county of indictment. There is further support for this principle in other American jurisdictions. The New Jersey Supreme Court also relied on the English case law as the basis for its conclusion that a Superior Court judge is empowered, under the common law, to transport an impartial, foreign jury for the purpose of hearing trial in the county where the indictment was obtained. *State* v. *Collins, supra.* See also N.J. Stat. Ann. § 2A:76-1 (West 1976). The highest courts of North Carolina and Kentucky have recognized the statutory authority of a judge of a comparable trial court to order a special jury from another county where the facts indicate that an unbiased jury cannot be drawn from the county where the crimes allegedly occurred. *Hemphill* v. *Commonwealth,* 405 S.W.2d 956, 959 (Ky. 1965). *Baxter* v. *Commonwealth,* 292 Ky. 204, 213 (1942). See Ky. R. Crim. P. 33 (Michie 1983). Cf. *Bennett* v. *Commonwealth,* 309 S.W.2d 183, 185 (Ky. 1958). *State* v. *Cutshall,* 281 N.C. 588, 591 (1972). Cf. *State* v. *Harrill,* 289 N.C. 186, 190 (1976); N.C. Gen. St. § 15A-958 (Michie 1978) and § 9-12 (Michie 1981). Having concluded that a Superior Court judge possesses the authority to order a foreign jury,[14]

---

[13] From 1734 until 1797 Lincoln County was one of the counties in Massachusetts.

[14] Because we have concluded that the authority vests in the judges of the Superior Court, we need not consider whether the administrative justice of the Superior Court, acting under his authority, and pursuant to G. L. c. 212, § 21, may require that a Superior Court judge request permission from the administrative justice for the empanelment of a foreign

we set forth the criteria on which we relied in issuing our order and the legal standard a judge should use in deciding whether to issue such an order.

2. *Ordering a foreign jury served the administration of justice.* This court has both a constitutional and statutory source of power of superintendence over all inferior courts. See G. L. c. 211, § 3. In exercising this power the court is guided by a policy of prompt, efficient, and impartial disposition of cases. In *Crocker* v. *Superior Court, supra* at 179, we stated that our courts have, under the Constitution of the Commonwealth, "the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require."

We issued our order of May 23, 1983, because we concluded that the importation of a jury from Hampden County would promote the fair administration of justice. The defendants and the Commonwealth could obtain a more efficient disposition of their cases because a Norfolk based trial would preclude the need for extensive travel by parties, counsel, and witnesses, and the transporting of evidence and paperwork required for the trial. A trial in Norfolk County would also serve the public's interest by reducing expenses for the defendants and the Commonwealth. The costs of transporting witnesses, court-appointed defense counsel, and prosecutorial staff could be avoided if the trial

jury. See G. L. c. 211B, § 10; G. L. c. 212, § 14A. We think the principles of sound administration would warrant such an order. General Laws c. 212, § 21, as amended by St. 1978, c. 478, § 122, provides: "The administrative justice may, by written order to the sheriff, order a special jury for a sitting for criminal business to be held in any county at such time and place as may be appointed in such order. The sheriff shall give notice thereof as directed in the order therefor; but no person under recognizance to answer to an indictment or to a criminal complaint shall be held to appear at such special sitting or at any time and place other than the regular sittings of the court, unless duly notified by written summons from the clerk."

took place in the county of indictment.[15]  The consent of the
defendants to this procedure was of no small consequence.
Additionally, to hold the trial in the vicinity where the
events occurred is consistent with the provisions of art. 13 of
our Declaration of Rights which provides: "In criminal
prosecutions, the verification of facts in the vicinity where
they happen, is one of the greatest securities of the life, lib-
erty, and property of the citizen."

The policies underlying Fed. R. Crim. P. 21 (b) and its
Massachusetts counterpart, Mass. R. Crim. P. 37 (b) (2),
378 Mass. 914 (1979), further support the conclusion that a
trial in Norfolk County would promote best the fair admin-
istration of justice.  Federal rule 21 (b) and Massachusetts
rule 37 (b) (2) basically provide that in a multivenue indict-
ment, on a motion by the defendant, the trial judge may
transfer the venue for the convenience of parties and witnes-
ses, and in the interest of justice.  Although these rules do
not apply to a prosecution where the offenses allegedly oc-
curred in only one county, the factors which courts consider
in determining whether the interest of justice warrants a
venue transfer are particularly relevant to the present issue.
Courts have ordered a change of venue where the defend-
ants would incur substantial financial hardship in preparing
for trial in a district located far from their residences, the
location of their counsel and witnesses, and where the
events at issue allegedly occurred.  *Platt* v. *Minnesota Min-
ing & Mfg. Co.*, 376 U.S. 240, 243-244 (1964).  *United
States* v. *Posner*, 549 F. Supp. 475, 478-480 (S.D.N.Y.
1982).  *United States* v. *Erie Basin Metal Prods. Co.*, 79
F. Supp. 880, 885-886 (D. Md. 1948).  Cf. *United States* v.
*Cook*, 592 F.2d 877, 880-881 (5th Cir.), cert. denied, 442
U.S. 921 (1979) (trial judge may consider rule 21 (b) motion
for convenience of defendant's witnesses).  The ability of
the defendants to prepare their defenses effectively also has

---

[15] The sequestration of jurors in this matter would involve no greater ex-
pense to the Commonwealth whether the group was sequestered in
Hampden County or Norfolk County.

been a major consideration in determining whether a venue change serves the interest of justice. See *Platt* v. *Minnesota Mining & Mfg. Co.*, *supra* (whether fairness to defendant justifies rule 21 (b) order depends inter alia upon location of counsel, witnesses, where operative events took place); *United States* v. *Aronoff*, 463 F. Supp. 454, 457, 459-460 (S.D.N.Y. 1978) (preparing for trial in district inaccessible to counsel, together with financial hardship, warrants venue transfer for defendant); *United States* v. *Casanas*, 233 F. Supp. 1001, 1004 (D.D.C. 1964) (hardship to defendant in removing legal documents, witnesses to a foreign State for trial considered in allowing rule 21 (b) motion). Courts also have sought to curtail the expenses of each party and expedite the litigation process in determining this propriety of a venue change. *United States* v. *Casanas, supra. United States* v. *Erie Basin Metal Prods. Co., supra* at 886.

Considering all of the criteria as applied to the defendants, we concluded that holding trial in Norfolk County with a foreign jury would promote the fair administration of justice. We conclude also that a Superior Court judge in similar circumstance properly may order the empanelling of a sequestered jury in one county for the purpose of hearing the trial of the defendants in another county. We emphasize, however, that such an order ought not be given lightly. The words of the court in *Crocker* seem fitting as a guide to the exercise of judicial discretion: "Such a motion ought not to be granted upon mere suggestion, nor unless the reason for it is fully established. It is a jurisdiction which should be exercised with great caution and only after a solid foundation of fact has been first established. Manifestly it should be resorted to only in aid of justice, and it should not be permitted to be employed as an instrument of obstruction or as a means of delay." *Crocker* v. *Superior Court*, 208 Mass. 162, 180 (1911).