**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3035-22

LISA M. MOORE,

     Plaintiff-Appellant,

v.

MICHAEL D. TERRELL,

     Defendant-Respondent.

_____

Submitted April 8, 2024 – Decided April 29, 2024

Before Judges Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-1666-02.

Law Office of Harriet Elaine Raghnal, attorneys for appellant (Harriet Elaine Raghnal and April Celeste Bauknight, on the brief).

Respondent has not filed a brief.

PER CURIAM

Plaintiff Lisa Moore appeals from the trial court's May 4, 2023 order entered in favor of defendant Terrell Michael denying her motion for reimbursement of college tuition expenses, medical expenses, and health insurance coverage costs associated with the parties' daughter. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

In June 2002, defendant was determined to be the father of the parties' daughter, who was born in 2001, based on the results of DNA testing.[1] At that time, the court also entered an initial child support order and further directed that defendant was responsible for fifty-seven percent of extraordinary medical expenses. The parties next appeared in court in November 2007 where the court denied plaintiff's request to increase child support but ordered defendant to enroll his daughter on his employer-provided medical insurance plan.

In January 2023, defendant moved to emancipate his daughter.[2] Plaintiff in turn filed a cross-motion requesting: (1) a change of venue, (2)

---

[1] The parties were never married. Their daughter is the only child of plaintiff and defendant.

[2] The parties' daughter graduated college in May 2022.

A-3035-22

reimbursement for medical expenses, (3) imposition of penalties for defendant failing to provide medical insurance or reimbursements for costs to provide such insurance, (4) reimbursement for college expenses, and (5) modification of the existing order to not terminate child support until arrearages were paid.

At the hearing, plaintiff did not oppose defendant's emancipation application. Rather, plaintiff focused on defendant's obligation to reimburse her for medical expenses, insurance premiums, and contributions to their daughter's college expenses.[3] Plaintiff explained as their daughter prepared to go to college, the parties applied for student loans, but both were denied. Plaintiff's husband and her mother-in-law eventually assisted in securing Parent Plus Loans for tuition. The loans ultimately amounted to $138,066, which plaintiff's husband and her mother-in-law are obligated to pay off.[4]

---

[3] As addressed below, the court did not address the motion to change venue.

[4] Plaintiff stated:

> I went around begging people and I finally got my husband to agree and my mother-in-law. So, their names are actually the ones on the Parent Plus Loan and they only did it with the assumption that [defendant] and I would pay back the loan and [defendant and I] would cover each [fifty] percent of it. So, . . . the majority of the college expenses is this Parent Plus Loan.

A-3035-22

Plaintiff acknowledges there was no written agreement between the parties for the payment of the loans but asserted defendant orally agreed to share in the repayment. Plaintiff further claims the text messages between the parties evidences this agreement.

Notably, plaintiff stated defendant made payments on the loans while her daughter was in school. Moreover, she started to apply defendant's child support payments to the loans.[5] Defendant recounted he did not know about the loan until after it was issued, and no one asked him how much he could afford. However, defendant later acknowledged he "agreed" to pay $100 per month on the loan, which turned out not to be enough for plaintiff. At the time of the hearing, defendant had paid over $3,000 towards the loans.

Both parties also discussed their respective involvement in their daughter's college selection process. While she did not attend the college defendant had recommended, the school she attended was apparently less expensive. Defendant was aware his daughter would be attending college, and, in fact, he visited at least one college with her. Moreover, although there may be a dispute as to what agreement, if any, the parties reached regarding

---

[5] Plaintiff's text messages suggest defendant was paying approximately $7,600 per year in child support.

A-3035-22

defendant's contribution to his daughter's college tuition, he was aware that plaintiff, with the assistance of family members, had taken out loans for her.

Plaintiff stated she did not go to court earlier to obtain an order requiring defendant to contribute towards tuition because she proceeded with the understanding the parties had an oral agreement, and defendant was, at least, making partial payments when their daughter was in college. Defendant stated in one of the text messages that he was going to "continue to send the money for the [P]arent [P]lus [L]oan."

Plaintiff also discussed various medical expenses for her daughter, dating back to 2006, and medical insurance premiums not paid by defendant. She requested that defendant be responsible for fifty-seven percent of the medical expenses and insurance premiums, consistent with the prior orders.

On April 28, 2023, the trial court granted the emancipation motion and terminated defendant's child support obligation as of May 2022, when his daughter graduated college. Additionally, on May 4, 2023, the court denied plaintiff's application for reimbursement of tuition costs. It further denied plaintiff's request for uncovered medical expenses and health insurance costs.

Regarding the college expenses, the court determined that defendant was only "periodically" involved in conversations concerning his daughter's

5

plans to enter college. Additionally, the court found plaintiff did not discuss "any aspects" of the request for tuition assistance with defendant and only requested "contribution through the courts after the loans were obtained and the child completed her college education." Regarding defendant's participation in the college enrollment process, the judge determined: "There were no proofs provided reflecting the consultation with [d]efendant regarding the university in which the child would enroll." The court also found defendant's payments towards his daughter's tuition while she was enrolled in college was not indicative of "an agreement to cover half of the child's college tuition."[6]

The court enumerated the Newburgh v. Arrigo[7] factors in its decision, but did not conduct a plenary hearing, request financial information from the parties, or analyze the factors. Instead, the court denied plaintiff's application for contribution towards college expenses because there was no "consultation" between the parties.

---

[6] The court also expressed skepticism during the hearing, noting it did not find anything to warrant relief, as there was no written agreement or court order requiring defendant to pay half of the tuition costs and characterized the application as "out of time essentially."

[7] Newburgh v. Arrigo, 88 N.J. 529, 545 (1982).

A-3035-22

Regarding plaintiff's motion for medical expenses and insurance costs, the court denied the requests based upon the doctrine of laches. The court was concerned that plaintiff filed the application in January 2023, yet requested reimbursement for medical costs dating back to 2006—more than sixteen years earlier. The judge explained, "[p]laintiff had the ability to file an application for reimbursement of uncovered medical expenses and health insurance costs much closer to the time when the expenses were incurred." The court opined that laches barred any relief because the delay was unreasonable. This appeal followed.

II.

Our review of Family Part orders is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). We will not disturb the factual findings made if they are supported by substantial, credible evidence in the record. MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere . . . ." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v.

7

E.P., 196 N.J. 88, 104 (2008)).  "We will reverse only if we find . . . trial judge[s] clearly abused [their] discretion . . . ."  Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012).  However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

## A.

Plaintiff argues the trial court's failure to find the parties had an oral agreement regarding the repayment of the loan constituted a reversible error. She argues defendant clearly agreed to pay for their daughter's college expenses through text messages and acted in accordance with the agreement for four years while she was in college.  She further argues the parties had an oral agreement.  Plaintiff cites to the fact that both her and defendant attempted to secure loans, along with defendant's conduct in paying portions of the loans while their daughter was still in school, as evidence of defendant's agreement to be partially responsible for the remainder of the loans once she graduated. Plaintiff contends the judge erred in failing to review the records and not finding defendant had, in fact, agreed to assist in repaying the loans. Additionally, plaintiff relies on Harrington v. Harrington for the proposition that "to be enforceable, matrimonial agreements, as any other agreements, need

not necessarily be reduced to writing or placed on the record." 281 N.J. Super. 39, 46 (App. Div. 1995).

Plaintiff further contends the trial court erred when it failed to schedule a plenary hearing where submissions showed there was a genuine and substantial factual dispute between the parties. Plaintiff notes while defendant claimed he was not part of the college selection process, he acknowledged he was advised about his daughter's college selection, and he was involved in taking her to visit a college. Plaintiff asserts the college defendant wanted their daughter to attend was more expensive than the college where she ultimately enrolled. Moreover, plaintiff notes the court stated on the record there were "conflicting versions" of the obligation to pay back the student loans but did not conduct a plenary hearing.

We generally defer to the family court in its decision whether or not to grant a plenary hearing. Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012); see also Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (holding that we apply an abuse of discretion standard to a trial court's determination regarding the need for a plenary hearing). "[I]t is only where the affidavits show that there is a genuine issue as to a material fact, and that the [family] judge determines that a plenary hearing would be helpful in deciding such

factual issues, that a plenary hearing is required." Jacoby, 427 N.J. Super. at 123 (quoting Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)).

A plenary hearing is necessary "'when the submissions show there is a genuine and substantial factual dispute[,]' which the trial court must resolve." Llewelyn v. Shewchuk, 440 N.J. Super. 207, 217 (App. Div. 2015) (alteration in original) (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007)). Where the need for a plenary hearing is not as obvious, the movant must make a prima facie showing that the plenary hearing is necessary. Hand, 391 N.J. Super. at 106.

Here, the trial court misapplied its discretion in not conducting a plenary hearing. Because a plenary hearing is necessary when the submissions show a genuine and substantial factual dispute, and the court recognized there were "conflicting versions" about plaintiff's and defendant's obligation to pay the Parent Plus Loan, a full hearing should have been conducted. There were various disputes at the hearing, including defendant's involvement in the college search process, whether the parties had an agreement for the repayment of the loans, and the significance of defendant's payments toward the loans while their daughter was in college.

The court did not conduct a full plenary hearing. Rather, the court conducted something akin to a summary proceeding and entertained oral argument from the parties as to their respective positions about what agreements, if any, were reached with respect to defendant's obligation to contribute to their daughter's college tuition. There was no formal testimony, cross-examination, or introduction of evidence. Moreover, the court did not make clear credibility findings and appeared to base its decision, in part, on the fact there was no written agreement or court order requiring defendant to make college contributions. The court did not squarely address whether the parties had entered into an oral contract for the payment of college expenses.

The court noted that while defendant was making regular payments toward the loan, it did not consider those amounts ($100 per month) as evidence he agreed to pay half of his daughter's college expenses. While this may not be evidence of an agreement to pay half of the college expenses, it may indicate an agreement to contribute to the overall total once she graduated. That is, why was defendant paying anything toward the loan if there was no agreement? Furthermore, how does the court reconcile defendant's statement he "agreed" to certain payments? How long did he agree to make such

11

payments, and what was the understanding between the parties when defendant stopped paying child support?

Defendant's text messages and statements at the hearing indicate he was contributing—above and beyond his child support obligation payments—towards the Parent Plus Loans. How long defendant "agreed" to make these payments, and whether they would increase when he stopped paying child support, is not clear. The court must address these issues on remand.

Accordingly, we are constrained to remand for a hearing to address what, if any, agreement was entered into between the parties regarding their daughter's college expenses. If the court determines there was in fact some agreement, the court need not address Gac[8] and Newburgh, but it should enforce the contract. On the other hand, if the court determines the parties did not enter into a binding agreement for the payment of college tuition, the court must conduct a plenary hearing addressing Gac and Newburgh as discussed below.

### B.

Plaintiff next asserts the court committed reversible error by failing to consider the Newburgh factors to determine if, and how much, defendant

---

[8] Gac v. Gac, 186 N.J. 535 (2006).

should contribute towards college expenses. She argues that unlike the facts in Gac, where the Court determined the father was not responsible for contributing to the minor child's college expenses, defendant here had a relationship with his daughter, had taken her on college visits, and acknowledged it was important to him that she attend college. Moreover, defendant attempted to apply for a loan for her tuition. Therefore, he participated to some extent in the college process and was aware of her need to secure loans.

In Avelino-Catabran v. Catabran, we noted that where the parties had an agreement regarding how college expenses should be divided, the trial court need not apply the factors in Newburgh. 445 N.J. Super. 574, 591 (App. Div. 2016). Rather, the court should enforce the agreement as written. See Quinn v. Quinn, 225 N.J. 34, 35-36 (2016) (Cf. Gac, 186 N.J. at 544-45 (addressing college expenses in the absence of an agreement); Newburgh, 88 N.J. at 534 (discussing factors to be considered where there was no agreement regarding college expenses)). However, absent an enforceable agreement apportioning child support and college costs, "a trial court should balance the statutory

criteria of N.J.S.A. 2A:34-23(a)[9] and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac, 186 N.J. at 543. Under Newburgh, a court must consider:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the

---

[9] N.J.S.A. 2A:34-23 provides:

> a.    In determining the amount to be paid by a parent for support of the child and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:
> (1)    Needs of the child;
> (2)    Standard of living and economic circumstances of each parent;
> (3)    All sources of income and assets of each parent;
> (4)    Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
> (5)    Need and capacity of the child for education, including higher education;
> (6)    Age and health of the child and each parent;
> (7)    Income, assets and earning ability of the child;
> (8)    Responsibility of the parents for the court-ordered support of others;
> (9)    Reasonable debts and liabilities of each child and parent; and
> (10)   Any other factors the court may deem relevant.

14

background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[88 N.J. at 545.]

In <u>Gac</u>, the Supreme Court noted that "the factors set forth in <u>Newburgh</u> . . . contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred." 186 N.J. at 546. As such, "[t]he failure to do so will weigh heavily against the grant of a future application." <u>Id.</u> at 547. In <u>Gac</u>, the father paid child support while the child was in college, and the mother did not request college expense contribution until after graduation. <u>Id.</u> at 539. The Court concluded that "those facts are significant and tip the scale in favor of

denial of plaintiff's request for contribution." Id. at 547. Subsequently, in Gotlib v. Gotlib, we applied the Gac holding and concluded that, when the motion is brought after the expenses are incurred, thereby excluding the parent from the decision-making process, splitting college expenses in half between the parties without addressing the Newburgh factors was "not sustainable." 399 N.J. Super. 295, 310 (App. Div. 2008).

Here, if the trial court on remand determines there was no agreement between the parties to pay for college expenses, it should analyze this case pursuant to Gac and Newburgh. Although the Newburgh factors are referenced in the court's opinion, there was no specific analysis of the factors because the court determined a plenary hearing was not necessary. On remand, those factors should be addressed if appropriate to do so under Gac and if the court determines there was no contract entered into between the parties that controlled defendant's obligation with respect to the payment of college expenses. Following a full hearing, the court will be in a better position to meaningfully analyze these factors.

The court must develop a full record and consider testimony on the issue of the consultation between the parties and defendant's involvement in the college search process. As with the issue regarding whether there was a

16

contract between the parties, a plenary hearing is necessary to resolve the factual disagreements between the parties, including when the educational decisions were made and the efforts made to involve defendant in the decision-making process. Moreover, the court did not have access to the parties' financial information, and a plenary hearing will provide the court an opportunity to consider this information in the context of analyzing the Newburgh factors.

C.

Plaintiff also claims the trial court wrongfully applied the legal concept of laches when denying her entire request for contribution for her unreimbursed medical and insurance expenses. Plaintiff argues defendant "was aware of his court ordered contribution to unreimbursed medical expenses and health insurance coverage." Because the court entered a subsequent order in 2007 that mandated defendant to pay for fifty-seven percent of medical expenses, plaintiff contends defendant's failure to comply does not result in "harm and inequity" for him, even though she waited to petition for reimbursement many years after the expenses accrued.

"Laches is an equitable doctrine which penalizes knowing inaction by a party with a legal right from enforcing that right after passage of such a period

17

of time that prejudice has resulted to the other parent[] so that it would be inequitable to enforce the right." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002). "The key ingredients" to the applicability of laches "are knowledge and delay by one party[,]" coupled with a detrimental "change of position by the other [party]." Ibid. Thus, factors considered in determining whether to apply laches include "'[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay.'" Ibid. (quoting Lavin v. Bd. of Educ. of City of Hackensack, 90 N.J. 145, 152 (1982)). "While laches does not arise from delay alone," inequity "more often than not, will turn on whether a party has been misled to his harm by the delay." Ibid. (quoting Lavin, 90 N.J. at 153).

However, "unlike the periods prescribed by the statute of limitations," the constraints of laches "are not fixed" but are flexible enough to accomplish mutual fairness and equity in a given case. Lavin, 90 N.J. at 151. "[W]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2012) (quoting Garrett v. Gen. Motors Corp., 844 F.2d 559, 562 (8th Cir. 1988)).

Here, the child support agreement, dated June 26, 2002, made defendant liable for fifty-seven percent of their daughter's medical expenses. Plaintiff requests that defendant reimburse her for various medical expenses for their daughter, some of which date back to 2006. The trial court, in a written decision, explained:

> In the current case, [p]laintiff filed this application [on January 1, 2023] and presented evidence of uncovered medical expenses dating back to [August 30, 2006], a difference of more than sixteen . . . years. Plaintiff also presented evidence of health insurance coverage costs dating back to [August 10, 2001] which was more than twenty-two . . . years before filing the instant application. Regarding health insurance coverage costs, [p]laintiff provided a 2007 court order for [d]efendant to enroll the child through his employer medical insurance plan. Plaintiff testified that between 2014 and 2019, [d]efendant had not covered the costs as previously ordered. Plaintiff had the ability to file an application for reimbursement of uncovered medical expenses and health insurance costs much closer to the time when the expenses were incurred.

We generally agree the court did not misapply its discretion on the laches issue except as noted below. Plaintiff waited an excessive amount of time to petition the court for defendant to reimburse her for certain of the medical expenses and insurance coverage costs. She was aware she could return to court as evidenced by her text messages to defendant regarding the college

19

tuition issue, where she notes that if they cannot agree, she would go back to court. For some unknown reason, she never returned to court until defendant moved for emancipation. We would note, however, that certain of the expenses are from as recent as 2019, when the parties' daughter was beginning college. We conclude that on remand plaintiff may seek to recover any medical or insurance-related expenses on or after 2019, but no earlier. While it would be prejudicial to require defendant to reimburse plaintiff for medical expenses from when their daughter was very young, it is not unreasonable to require him to pay for the more recent bills from her college years. We therefore affirm in part and vacate in part the trial court's decision concerning the medical expenses and insurance costs.

## D.

Lastly, plaintiff argues the trial court committed reversible error by failing to address her motion to change venue. She advised the court that she now resides in Bergen County, and no longer in Passaic County, where the matter was being heard. Defendant lives in Georgia.

Rule 4:3-3(a) provides:

> [A] change of venue may be ordered . . . if there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid[,] for the convenience of parties and witnesses in the interest of

> justice [or] in Family Part post-judgment motions, if both parties reside outside the county of original venue and application is made to the court by either party to change venue to a county where one of the parties now resides.

The word "may" indicates the court has discretion to grant or deny the motion depending on the particular circumstances. See also State v. Collins, 2 N.J. 406, 411 (1949) ("Motions for a change of venue . . . are addressed to the sound discretion of the court.").

Here, the trial court did not address plaintiff's motion to change venue. On remand the court shall consider the motion following its decision on the other substantive matters noted above.

### E.

Although we recognize the time the trial court expended in this matter, on remand, we direct a different judge to try this case. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 59-60 (2009) (citing Entress v. Entress, 376 N.J. Super. 125, 133 (App. Div. 2005) (remanding to different judge "to avoid the appearance of bias or prejudice based upon the judge's prior involvement")). To the extent we have not addressed any remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings.

We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION