COMMONWEALTH vs. GORDON F. HAAS.

Middlesex.   October 8, 1986. — December 17, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Constitutional Law,* Assistance of counsel. *Witness,* Expert. *Practice, Criminal,* Argument by prosecutor, Continuance. *Evidence,* Photograph.

The record of a murder trial did not substantiate the defendant's claim that his trial counsel's failure to prepare his expert witness and use of certain hypothetical questions in examining the witness amounted to ineffective assistance of counsel under the standard enunciated in *Commonwealth v. Saferian,* 366 Mass. 89 (1974), where trial counsel had familiarized himself with the witness's testimony at a previous trial of the defendant; where he had conferred with the witness on the morning he testified and determined that the witness was familiar with his previous testimony; and where his examination of the witness elicited testimony supportive of the defendant's contentions concerning the time of the victims' death and the reliability of the prosecution's estimate of that time. [809-812]

At a murder trial, several unobjected-to instances in which the prosecutor, during closing argument, either misstated the evidence or urged inferences not supported by the evidence did not, either individually or in the aggregate, present a substantial risk of a miscarriage of justice. [812-813]

A judge carefully balanced the relevant factors and acted properly within his discretion in denying a defendant's motion for a continuance of his murder trial in order to enable a certain attorney to represent him. [814-815]

At a murder trial the judge did not abuse his discretion in admitting in evidence color photographs of the victims' bodies, where the photographs were relevant and probative in that they aided the jury in evaluating the testimony of pathologists. [815-816]

INDICTMENTS found and returned in the Superior Court on September 12, 1973.

After review by this court, 373 Mass. 545 (1977), the cases were retried before *John T. Ronan,* J.

*Virginia Lee* for the defendant.

*Dyanne Klein Polatin,* Assistant District Attorney (*Frederick B. McAlary,* Assistant District Attorney, with her) for the Commonwealth.

HENNESSEY, C.J. The defendant returns to this court after having been found guilty by a Superior Court jury on three indictments charging murder in the first degree. The defendant had originally been tried in 1975 for the same crimes and had been found guilty on all indictments. On appeal to this court, we reversed the judgments and remanded the case for a new trial. *Commonwealth* v. *Haas,* 373 Mass. 545 (1977). A second trial occurred in June, 1979, but a mistrial was declared when the jury were unable to reach a verdict. A third trial was then held from March 17 through April 8, 1982, which resulted in the current convictions. The defendant's appeal from these convictions has been consolidated with his appeal from a denial of his motion for a new trial. We affirm both the judgments of conviction and the denial of the motion for a new trial.

Because the facts of this case are set out in our previous opinion, we review only those facts relevant to this appeal. At the time of the murders, the defendant, his wife, Shirley, and their two children, Gordon, Jr., and Melissa, lived in Ipswich. The defendant worked at Lechmere Sales in Cambridge. There was evidence from a person who lived nearby that the defendant was at his home on the morning of June 26, 1973, at approximately 6:30 A.M. The defendant arrived at work at approximately 7:30 A.M. At approximately 10:20 A.M., the defendant called the Ipswich police station from his office in Cambridge and reported that he had just received an anonymous telephone call to the effect that "black and white don't mix" and that his family had just been "taken care of." [1] An officer was dispatched to the family home and discovered the front door open with a key in the lock. In the upstairs bedrooms, the officer found the bodies of Shirley Haas and the children. Each victim's head was covered with a white plastic bag tightly secured with adhesive tape. In the master bedroom, a note propped up on

---

[1] The Haases were an interracial couple. He is white; she was black.

a nightstand read, "I'm sorry, but Black and White don't mix." Other police officers arrived, searched the house, and found it to be "secure" with no signs of violence. The only sign of disturbance was in the master bedroom where the sheets were off the bed.

At approximately 10:40 A.M., Dr. John J. Pallotta, an associate medical examiner in Essex County, arrived at the Haas home. Without undressing the bodies, he examined all three for heartbeat, temperature, rigor mortis, and lividity. He determined that the cause of death for all three victims was asphyxia. On the basis of temperature, lividity, and rigor mortis, he formed the opinion that death had occurred on June 26 between 2:55 A.M. and 5:15 A.M. The medical examiner also noted that the fingernail on the middle finger of Shirley Haas's right hand was broken.

Meanwhile, the defendant returned to his home after having called the police station and being told "to return to his home as soon as he could because apparently a tragedy had occurred." On arriving home, the defendant was immediately taken to the Ipswich police station where he was arrested.[2] At the police station, officers observed scratches on the right side of the defendant's face.

Dr. George Katsas, then an associate medical examiner in Suffolk County, performed the autopsies of the victims in the late afternoon on June 26. He determined that, based on the petechial hemorrhages and bloody froth coming from the victims' nostrils and mouths, the cause of the deaths was asphyxia. He also determined that the time of death was twelve to sixteen hours prior to his examination of the bodies between 5 and 6 P.M. His opinion concerning the time of death was based on

---

[2] In our previous opinion in this case, we held that a statement by the defendant at the police station, to the effect that he had left for work that morning at approximately 6:30 A.M., was made in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). Consequently, the police lacked probable cause to arrest the defendant. This resulted in the suppression on retrial of both the statement and four handwritten notes found on the defendant at the time of the illegal arrest. One note appeared to be a list, including the words "gloves, overalls, tape, bags, ether, mask." *Commonwealth* v. *Haas, supra* at 549-556.

rigidity, body temperature, the internal condition of the bodies, the absence of decomposition, the clearness of the eyes, and data provided by the medical examiner and police officers who saw the bodies earlier in the day.

1. The defendant's first argument on appeal concerns a claim of ineffective assistance by trial counsel.[3] The Commonwealth introduced testimony of three medical experts who testified as to the probable time of death. Drs. Pallotta and Katsas testified as indicated above. Dr. Dominic J. DiMaio, the retired chief medical examiner for the city of New York, testified that, in his opinion, the time of death was six to ten hours before the time that the bodies were found at 10:50 A.M., resulting in a time of death between 1 and 5 A.M. The defense introduced the testimony of Drs. George Hori, medical examiner in Middlesex County, and John F. Devlin, formerly associated with the office of the chief medical examiner in New York City,[4] both of whom had testified at the prior trials. Dr. Hori testified that he could not make a determination of time of death on body temperature alone. Under questioning by trial counsel he stated that, assuming rigor mortis was "complete" at noon, death could have occurred at 6 A.M., 7 A.M., or 8 A.M. Trial counsel then posed a hypothetical question that asked Dr. Hori, using the "standard formula,"[5] to determine the time of death assuming that rigor mortis was complete at 5 P.M. and that a rectal temperature of seventy-eight degrees Fahrenheit was recorded for the victims at that time. Dr. Hori responded that the time of death would be fourteen hours prior

---

[3] This claim also served as the basis for the defendant's motion for a new trial. As the substantive issues are the same on direct appeal as in the motion for a new trial, they will be considered together.

[4] Because Dr. Devlin had died between the first and third trials, his testimony at the first trial was read into the record by the defense. His testimony indicated that determining the time of death was "almost in the category of crystal ball gazing," and that heat loss, rigor mortis, and lividity involved too many variables and could not be used to determine the time of death with any accuracy. He testified that Shirley Haas could have been alive at 7 A.M.

[5] The "standard formula" determines the time of death based on the loss of one and one-half degrees Fahrenheit in body temperature per hour.

to 5 P.M. On cross-examination, Dr. Hori conceded that four-teen hours prior to 5 P.M. was 3 A.M. This testimony was not entirely consistent with that given by Dr. Hori at the second trial. At that time, Dr. Hori testified that death could have occurred between 9 and 10 A.M. and that, at the very earliest, death may have occurred between 5 and 6 A.M.

On redirect examination, Dr. Hori stated that he had been subpoenaed to testify at the trial, that he had met trial counsel for the first time that day and that he had never talked to him before that day. At the hearing on the motion for a new trial, he stated that he was not as well prepared as he expected to be because he was not planning to testify. He stated that, on the day before he testified, he received a copy of the testimony he had given at the second trial, and had read but not studied it. He did not review the autopsy report prior to testifying, but had spoken with the defendant by telephone the previous evening.

The defendant argues that trial counsel's failure to prepare his own expert witness and his poor use of hypothetical questions constituted serious incompetence and inattention under our definition of ineffective assistance of counsel enunciated in *Commonwealth* v. *Saferian,* 366 Mass. 89 (1974).[6] He claims that because time of death was a crucial issue in the case, trial counsel's failure to present medical evidence supporting the defendant's claims deprived the defendant of an otherwise substantial defense. We disagree. In our opinion in *Saferian,* we held that assistance of counsel is ineffective where "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer."

---

[6] We need not specifically address the defendant's contention that he was denied the effective assistance of counsel under the Federal Constitution. We have held that "if the behavior of counsel meets the tests specified by Massachusetts law, then 'the Federal test is necessarily met as well.' *Commonwealth* v. *Howell,* 394 Mass. 654, 657 (1985), quoting *Commonwealth* v. *Fuller,* 394 Mass. 251, 256 n.3 (1985). *Commonwealth* v. *Florentino,* 396 Mass. 689, 690 n.1 (1986). See *Strickland* v. *Washington,* [466 U.S. 668 (1984)]. Thus we need only consider the defendant's claim under Massachusetts law, leaving open, once again, any differences between the two standards." *Commonwealth* v. *Charles,* 397 Mass. 1, 14 (1986).

*Id.* at 96. Furthermore, the failure to render effective assistance must have "likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.*

Trial counsel's preparation of the expert witness for testifying in this case did not deprive the defendant of his right to effective assistance of counsel. Trial counsel stated at the hearing on the motion for a new trial that he had discussed the case with the attorneys who represented the defendant at both the first and second trials and had read the testimony of Dr. Hori given at the second trial. Although he did not discuss the case with Dr. Hori prior to trial, trial counsel did meet with the doctor in the court house on the morning he testified and determined that he had received the transcript of the previous testimony and was familiar with it. Furthermore, trial counsel told Dr. Hori that counsel expected that the doctor would give essentially the same testimony that had been given at the second trial. See *Commonwealth* v. *Sellon,* 380 Mass. 220, 226-227 (1980); *Commonwealth* v. *Hamm,* 19 Mass. App. Ct. 72, 76-78 (1984); *United States* v. *Decoster,* 624 F.2d 196, 209 (D.C. Cir.), cert. denied, 444 U.S. 944 (1979) ("A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel").

With regard to the hypothetical questions presented to the witness, counsel's preparation in questioning this witness was demonstrated when he stated that he had chosen not to use the same hypotheticals presented in the prior trial because he felt that they were too long and confusing to be effective before the jury. Certainly, this conduct by counsel does not demonstrate the "serious incompetency, inefficiency, or inattention" that is required to prevail in a claim of ineffective assistance of counsel. In denying the defendant's motion for a new trial, the judge specifically found that defense counsel was not ineffective. He stated that "[t]he defense albeit unsuccessful, was cleverly and persuasively made . . . ."

The defendant also fails to show that counsel's conduct deprived him of an "otherwise available, substantial ground

of defence."[7] *Commonwealth* v. *Saferian, supra* at 96. *Commonwealth* v. *Rondeau,* 378 Mass. 408, 412 (1979). During direct examination of Dr. Hori, counsel did elicit the opinion from the witness that the time of death of the victims could have been as late as 8 A.M. Although counsel also presented the witness with a hypothetical question that resulted in the witness's testifying that the time of death could have been as early as 3 A.M., counsel nevertheless established that, in the opinion of the witness, the assumptions underlying the hypothetical question were faulty. Furthermore, the testimony of Dr. Devlin supported the contention that determining the time of death based on body temperature was inaccurate and that any opinion of time of death based on signs of death was in the category "of crystal ball gazing." In addition, Dr. Devlin opined that, in the circumstances, Shirley Haas could have been alive at 7 A.M. Thus, the jury were presented with evidence that the death of the victims could have occurred subsequent to the defendant's leaving for work. Taken as a whole, counsel's conduct of the trial did not in any way deprive the defendant of a substantial ground of defense.

2. The defendant next argues that the prosecutor made improper and prejudicial remarks during closing argument. Because the defendant failed to object at trial to the specific remarks raised on appeal, we limit our inquiry to a determination whether there was a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. We have recognized that "[i]n closing argument, counsel may argue the evidence and the fair inferences which can be drawn from the evidence." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 378 (1978). *Commonwealth* v. *Corriveau,* 396 Mass. 319, 336 (1985). *Commonwealth* v. *Lamrini,* 392 Mass. 427, 431 (1984). Although it is true that the defendant can point to several instances in which the pros-

---

[7] The defendant contends that, as a result of counsel's lack of preparation for the entire trial, no prejudice need be shown under *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977), in which we stated that, "[a]n exception might be indulged where the defense was so botched that judgments on that hypothetical question [of prejudice] would be without value." This clearly is not such a case.

ecutor misstated the evidence or urged inferences not supported by the evidence, those instances fail both individually and in the aggregate to present a substantial likelihood of a miscarriage of justice. Specifically, the prosecutor referred to testimony regarding the stage of Shirley Haas's rigor mortis when such testimony had been struck and had actually been in reference to Gordon, Jr. Arguments concerning witness testimony dealing with rigor mortis in Gordon, Jr., were likewise incorrect. Furthermore, comments by the prosecutor that the defendant, who was having a relationship with another woman during the time that he was married, had left a restaurant while with this woman, and placed a long-distance telephone call to his wife were not supported by the evidence. Finally, the prosecutor's comment that Dr. Devlin, an expert witness for the defense, did not know anything about determining time of death was clearly incorrect.

Although these statements were improper, they did not significantly prejudice the defendant. "In analyzing whether an improper remark is prejudicial or presents a risk of a miscarriage of justice, the remark must be considered in the context of the prosecutor's entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 885 (1984), and cases cited. In general, the over-all correctness of the prosecutor's argument negated the possibility that the jury were misled. See *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 417-418 (1978). The prosecutor at both the beginning and the end of closing argument stated that the jury's recollection of the facts was to control. *Commonwealth* v. *Dougan,* 377 Mass. 303, 312 (1979). Moreover, the judge instructed the jury before closing arguments that summations do not constitute evidence and during his charge that the jury alone are to determine the facts. See *Commonwealth* v. *Corriveau,* 396 Mass. 319, 339 (1985). The errors by the prosecutor do not approach the inflammatory appeals and prejudicial statements that have prompted reversals in the past. See, e.g., *Commonwealth* v. *Clary,* 388 Mass. 583 (1983); *Commonwealth* v. *Hoppin,* 387 Mass. 25 (1982); *Commonwealth* v. *Burke,* 373 Mass. 569 (1977); *Commonwealth* v. *Redmond,* 370 Mass. 591 (1976).

3. The defendant contends that the trial judge abused his discretion in denying a motion for a continuance to enable the defendant's counsel of choice to represent him at trial. We hold that the denial was properly within the sound discretion of the trial judge and that no error was committed. During the defendant's second trial, he was represented by Mr. John P. White. This trial ended in a mistrial on June 20, 1979. On July 1, 1981, Mr. White's motion for leave to withdraw was allowed, and Mr. Willie Davis was subsequently appointed to represent the defendant. Trial was originally scheduled for February, 1982, but was continued to March 17, 1982. On March 8, 1982, Mr. Davis filed a motion for leave to withdraw and, at a hearing orally requested a two-month continuance to allow succeeding counsel to prepare for trial.[8] This motion was filed in response to a letter, dated February 23, 1982, from the defendant to the effect that he had recently been able to secure funds privately to retain Mr. White for the upcoming trial. Without the continuance, Mr. White would be unable to represent the defendant. In arguing this motion to withdraw, Mr. Davis stated that he ceased work on the case on receipt of the defendant's letter. Both motions were denied.

"Ordinarily, the granting of a continuance rests in the sound discretion of the trial judge, and a denial of a continuance will not constitute error absent an abuse of that discretion." *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 50-51 (1976). *Commonwealth* v. *Klangos*, 326 Mass. 690 (1951). "In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy." *Commonwealth* v. *Cavanaugh*, *supra* at 51, quoting *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276-277 (1973).

The judge's decision to deny counsel's motion to withdraw and motion for a continuance reflected a careful balancing of

---

[8] This motion was subsequently reduced to writing on March 16, 1982.

the relevant factors: Mr. Davis had been representing the defendant for over nine months prior to his motion to withdraw; the case had been assigned a trial date at least six weeks earlier; the Commonwealth had arranged for twenty-seven witnesses, including three from out of State, to be available on the assigned trial date; Mr. Davis was an attorney of considerable skill and success and no assertion was made that counsel was unprepared at that time or would not be prepared by the time of trial;[9] and Mr. White, whom the defendant wanted to defend him, had, on March 4, 1982, written a letter to the assistant district attorney in which he stated that he would not represent the defendant if March 17 was a firm trial date even if the defendant had the funds to retain him, that the defendant had not retained him, and that he would not be available to try the case until "late May at the earliest." Because "a defendant should be afforded a fair opportunity to secure counsel of his own choice" (*Powell* v. *Alabama,* 287 U.S. 45, 53 [1932]; *Commonwealth* v. *Dunne,* 394 Mass. 10, 13 [1985]; *Commonwealth* v. *Scott,* 360 Mass. 695, 701 [1971]), a judge must be careful to consider the facts involved. Here, no abuse of that discretion occurred as the judge demonstrated "an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections." *Commonwealth* v. *Dunne, supra* at 14, quoting *United States* v. *Poulack,* 556 F.2d 83, 86 (1st Cir.), cert. denied, 434 U.S. 986 (1977). See also *Commonwealth* v. *Tuitt,* 393 Mass. 801, 806 (1985); *Commonwealth* v. *Funderberg,* 374 Mass. 577, 580 (1978); *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 518 (1972); *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 705-706 (1974).

4. Three color photographs of the victims were admitted in evidence over the defendant's objection. Two of the photographs showed petechial hemorrhages and froth present on the victims' faces, which, according to expert testimony, were indicative of death by asphyxiation. The defendant claims that

---

[9] The defendant's reasons presented to the judge at the time of the request are, of course, particularly important. *Ungar* v. *Sarafite,* 376 U.S. 575, 589 (1964).

the photographs were inflammatory and that their prejudicial effect on the jury exceeded any probative value. We disagree. The trial judge possesses considerable discretion in the admission of photographs, even though gruesome and inflammatory, if they possess evidential value on a material matter. *Commonwealth* v. *Nadworny,* 396 Mass. 342, 366-367 (1985), cert. denied, 477 U.S. 904 (1986). *Commonwealth* v. *Bastarache,* 382 Mass. 86, 105-106 (1980). *Commonwealth* v. *Stewart,* 375 Mass. 380, 385 (1978). Here, the photographs of the victims' bodies were relevant and probative as they assisted the jury in evaluating the testimony of the pathologists. Furthermore, the jury were properly instructed on the probative worth of the photographs. There was no error in admitting them in evidence.

5. Although the defendant does not specifically refer to our power under G. L. c. 278, § 33E, he argues that a new trial should be granted in order to safeguard against a substantial risk of a miscarriage of justice. We have reviewed the entire case and conclude that an exercise of our power under G. L. c. 278, § 33E, is unwarranted.[10]

*Judgments affirmed.*

---

[10] The defendant, in a pro se brief, also raises a speedy trial claim under Mass. R. Crim. P. 36 (b), 378 Mass. 909 (1979), and the State and Federal Constitutions, along with a claim that trial counsel's failure to raise this issue at trial deprived the defendant of his right to effective assistance of counsel. These claims were not argued on the motion for a new trial. Because they are raised for the first time on this appeal, we decline to consider their merits. *Commonwealth* v. *Lett,* 393 Mass. 141, 144 (1984). *Commonwealth* v. *Marchionda,* 385 Mass. 238, 242 (1982). See *Commonwealth* v. *Moore,* 20 Mass. App. Ct. 1, 6-7 (1985); *Commonwealth* v. *Atkinson,* 15 Mass. App. Ct. 200, 205 (1983).